# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## SEPTEMBER TERM, 1883.

CASE 41—EQUITY—SEPTEMBER 11, 1883.

## Carlisle v. Jumper, &c.

APPEAL FROM CAMPBELL CHANCERY COURT.

1. When a junior equity, without notice of the older equity, acquires the legal title, the senior equity must yield. In the absence of the legal title, the senior will have the preference.

2. B could not have successfully asserted his claim to a lien superior to appellant, and necessarily could not, by assigning his equity to another, give his assignee a greater right that he possessed.

3. The assignment by B to appellant of a lien upon the claims he was prosecuting against S, gave to him a lien superior to that of appellees, although B mortgaged to them the land he had already sold to S. The statute does not require that either be recorded, and appellant's equity is prior in time.

JOHN G. CARLISLE AND JOHN F. & C. H. FISK FOR APPELLANT.

1. This is purely a contest between equities, and must be determined by rules well established. In cases of conflicting equities, the maxim is, that precedency in time gives the advantage in right. (Chenoweth v. Williamson, 2 Bibb, 40; Duvall v. Guthrie, 3 *Ib.*, 532; Vanmeter v. McFadden, 3 B. Mon., 441; Growing v. Behn, 10 *Ib.*, 385; Jackson v. Holloway, 14 *Ib.*, 134; Dorsey v. Reese, *Ib.*, 158; Forepeah v. Appold, 17 *Ib.*, 631; Newby v. Hall, 2 Met., 533.)

2. Notice is immaterial. (Stephens v. Benton, 1 Duvall, 116; Hunt v. Sturdevant, 4 B. Mon., 464; Jackson v. Speed, 3 J. J. Mar., 59; Bank of America v. McNeil, 10 Bush, 59; Hardin v. Harrington, 11 *Ib.*, 367.)

3. There is no statute requiring or even authorizing the recording of
such a paper as appellees hold. (Bank U. S. v. Huth, 4 B. Mon.,
450; Mitchell v. Owings, 3 Marsh., 315.)

F. M. WEBSTER FOR APPELLEES.

1. Beyland had owned the land. By his deed to Sewell, he only parted
with the legal title, if that. He was, in interest, still the owner of
the land. (Rev. Stat., ch. 24, title Conveyances, p. 278.)
2. The provisions of the Revised Statutes are applicable to this case, and
protect Jumper's claim, at least against the claim of appellant.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In September, 1865, J. C. Beyland conveyed to H. M.
Sewell a tract of land in the county of Campbell in con-
sideration of two notes on one Ogden, that were transferred
by Sewell to Beyland. The notes were not paid at matu-
rity, and Beyland instituted an action in equity to enforce
his lien on the land. The parties litigated the issue as to
whether any lien was retained to secure the payment of the
two notes, and that litigation resulted in a judgment selling
the land to satisfy the lien. During the progress of that
action, the notes or claim of Beyland was sold to John G.
Carlisle, and the latter authorized to prosecute the action in
his (Carlisle's) name. Beyland, by a subsequent arrange-
ment with Carlisle, again became the owner of the claim
against Sewell, and in consideration of the retransfer by
Carlisle, executed to him his three several notes, amount-
ing, in the aggregate, to about thirty-five hundred dollars.
When these notes were executed to Carlisle, Beyland, for
the purpose of securing their payment, executed and deliv-
ered to Carlisle a writing, by which he gave to him a lien
on the claim he was prosecuting against Sewell, and binding
himself, in the event he was successful, to execute to him a
mortgage on the land. After this transaction, the appel-
lant, John G. Carlisle, became the owner of the notes on

Beyland, and the lien given to secure their payment. The transaction between John G. Carlisle and Beyland, giving to the former a lien on the Sewell claim,. took place in October, 1866.

After the assignment to Carlisle, Beyland made other assignments to Ficklin and Metz, and also undertook to mortgage the land he had already conveyed to Sewell to Constans and Jumper.

This controversy arises between the several creditors, to whom the claim had been assigned, as to the priority, if any, in the distribution of the fund created by the sale of Sewell's land.

The chancellor below, in the distribution, placed Carlisle on an equal footing with the other creditors, and he is complaining, insisting that he has the superior equity, and his claim should be paid in full.

The mortgagees from Beyland acquired no lien as against creditors or purchasers by reason of their mortgages, as there was no title in Beyland. He had already conveyed to Sewell, and the only claim that Beyland had was the lien retained in the conveyance to secure the purchase-money. The mortgages executed to the several creditors can only be construed as equitable assignments of the lien, and there is no law authorizing the contracts of assignments made between any of these parties to be recorded, and therefore the fact that some of the transfers were entered of record can give no preference to the creditors, or operate as a notice to purchasers.

This, it seems to us, is purely a contest between equities, and the senior equity must prevail. When the junior equity, without notice of the older equity, acquires the legal title, the senior equity must yield; but in the absence of the legal

Carlisle v. Jumper, &c.

title, the senior equity will have the preference, and, as said by this court in Hunt v. Sturdevant, 4 B. M.: "The senior may as well complain of a want of notice of the junior as the junior can complain of a want of notice of the senior." The question of notice does not arise in this case, and the assignees of the several equities asserted took them subject to all the equities that attached to the claim while in the hands of the assignor. Beyland could not have asserted his claim to a lien superior or equal to that transferred to Carlisle, and therefore he could not, by assigning it to others, give to them a greater right than he himself had. Beyland had executed to Carlisle his individual notes for this money, and, to secure the payment, had, by the written agreement, given him a lien on the entire claim, or so much of it as would pay his debt. This contract was binding between the two, and a subsequent transfer securing other debts must be held subordinate, in the distribution of the fund, to Carlisle's claim. They acquired no greater right as against Carlisle to this fund than the original assignor, Beyland, had. "Priority in time gives the advantage in right" in a case like this.

The chancellor below regarded this case as analogous to the assignment of several notes executed for the purchase-money of land or secured by the same mortgage. Where several notes are secured by the same mortgage, each note carries with it as an incident its proportion of the sale of the mortgaged property. A party to whom one of the notes is assigned does not acquire the entire mortgage security, because the other notes are of the same dignity and retain the same lien, and he only takes by the assignment so much of the security as belongs to his share of the lien, the equities of all the holders of the lien notes being equal.

In this case the appellant purchased no claim against Ogden, nor had Ogden or Sewell given him any lien.

Beyland was prosecuting his claim to enforce the lien, and when executing his individual note to Carlisle in order to indemnify him, transferred to him the claim on Sewell, or agreed that he should have a *lien* to satisfy the note. If, therefore, Beyland, by this agreement, postponed his right to that of Carlisle, then a subsequent assignee from Beyland is in no better condition.

We think it manifest that Beyland, the assignor, could have asserted no claim to the fund until Carlisle was satisfied, and this being the case, the court erred in not giving to Carlisle, who held the senior equity, a preference over the other creditors in the distribution.

Judgment reversed, and cause remanded, with directions to enter a judgment in accordance with this opinion.